OCEAN ACCIDENT & GUARANTEE CORPORATION, LIMITED, OF
    LONDON, ENGLAND, Appellant, vs. COMBINED LOCKS
    PAPER COMPANY and another, Respondents.

*December 10, 1915—February 1, 1916.*

*Employer's liability insurance: Increase in rate: New contract: Policy*
    *issued by nonresident agent in violation of law: Validating stat-*
    *ute: Construction: Obligation to pay premiums: Cancellation*
    *when assured retires from business: What premiums to be re-*
    *tained.*

1. Where an employer's liability insurance policy running for three
   years was modified, with the consent of the assured, by a written
   stipulation annexed increasing the rate, the transaction was
   equivalent to making, at the date of such modification, a new
   contract of insurance for a new premium but otherwise on the
   terms of the original policy.
2. A policy of indemnity insurance issued in violation of sub. 1, sec.
   1919a, Stats. (providing that no policy of insurance shall be is-
   sued or delivered in this state except through a resident agent
   holding a certificate of authority under sec. 1976), by unlicensed
   nonresident agents of a company licensed to do business in this
   state, was validated by sub. 4, sec. 1919a (which provides "This
   section shall not prevent any insurance placed in violation there-
   of from taking effect"), and such validation included the obliga-
   tion of the assured to pay the premium.
3. The retirement from business of one only of two corporations
   jointly insured by an indemnity policy was not within the mean-
   ing of a stipulation therein that if the policy should be canceled
   by the insured when retiring from business the earned premium
   only should be retained by the insurer.

APPEAL from a judgment of the municipal court of Outa-
gamie county: THOMAS H. RYAN, Judge. *Reversed.*

For the appellant there was a brief by *C. G. Cannon,* at-
torney, and *R. F. Potter,* of counsel, and a separate reply
brief and oral argument by *Mr. Cannon.*

For the respondents the cause was submitted on the brief
of *Francis S. Bradford.*

TIMLIN, J.    The action is to recover the unpaid remainder of premium alleged to be due upon an employer's liability policy running for three years and executed December 16, 1910, modified by a written stipulation annexed increasing the rate August 31, 1911, and canceled at request of insured to take effect December 16, 1912.    The trial court found that the policy was issued by Illinois representatives of the plaintiff not licensed to do insurance business in Wisconsin, who then sent the policy to the plaintiff's resident agent at Milwaukee to be countersigned, with the intent of evading the insurance laws of this state.    That the premiums were collected by the Illinois representatives and the plaintiff's resident agent at Milwaukee was sent a commission to satisfy him for the loss of the business, and that no report or accounting was ever made to the officers of Wisconsin of this insurance.    On August 31, 1911, the plaintiff raised the rates of insurance on the policy from seventy-two cents per $100 to $2 per $100, and issued a writing from its Chicago office by officers not authorized to do such business in Wisconsin and without countersign or sanction of any officer or agent of the plaintiff in Wisconsin.    These unlicensed persons thereby added a certain stipulation to the policy, with the consent of the assured, making such change of rate, and this was also done with design to evade the laws of Wisconsin.    The policy was issued with the intent to evade an accounting to the state for the percentage due to the state upon insurance written within this state.    Upon these findings the trial court declined to pass on the validity of the policy as first issued, it appearing that the whole balance of premium unpaid, computed either according to plaintiff's theory or defendants' theory, rested upon the validity of the transaction of August, 1911, increasing the rate.    He held this transaction void and gave judgment for defendants.

It is contended that those findings which say there was at any stage of the transaction an intent to evade the laws of

Wisconsin are not supported by evidence. We do not find it necessary to pass upon this point, because, even assuming that such intention was shown to exist when the policy first issued, there is no evidence of such intention with reference to the transaction of August 31, 1911. This transaction was equivalent to making a new contract of insurance at that date for a new premium, but otherwise on the former terms. Secs. 1976, 1978, and 1919a, Stats. 1911, form a system of insurance regulation for this state intended to require insurance policies to be issued from the offices of and by licensed agents residents of this state. Sec. 1955o—5 imposes a penalty on any person or corporation violating any law of this state relating to insurance. By an amendment to sec. 1919a which went into effect after the policy was issued but before the transaction of August 31, 1911, sub. 4 of sec. 1919a was added to this statutory system of regulation. That subdivision reads as follows: "This section shall not prevent any insurance placed in violation thereof taking effect." Aside from this sub. 4, sec. 1919a provides that no policy of insurance shall be issued or delivered in this state except through an agent resident of this state holding a certificate of authority under sec. 1976.

This case turns on the effect of the enactment of sub. 4, *supra.* Such effect must be deduced from a consideration of this and other statutes on the same subject. *Laun v. Pacific Mut. L. Ins. Co.* 131 Wis. 555, 111 N. W. 660. There can be no doubt that sub. 4 validates the policy of insurance issued in violation of that section. Does it also, by so doing, validate the promise to pay the premium for that policy? This very point was passed upon in *Union Ins. Co. v. Smart,* 60 N. H. 458, from which we quote:

"To give the policy-holder the protection intended by statute, it is necessary to hold the premium note given for a policy declared by the statute valid against the company also valid; otherwise there would be no consideration for the policy."

This case was followed in *Conn. River Mut. F. Ins. Co. v. Whipple,* 61 N. H. 61. See, also, *Provincial Ins. Co. v. Lapsley,* 81 Mass. (15 Gray) 262, where the language of the statute is somewhat different; also *Hartford L. S. Ins. Co. v. Matthews,* 102 Mass. 221; *Reliance Mut. Ins. Co. v. Sawyer,* 160 Mass. 413, 36 N. E. 59.

We do not go to the extent of holding that the legislature could not validate the policy without validating the obligation to pay the premium agreed upon. See cases in Wis. Annotations to sub. 10, sec. 1770*b,* Stats. We do, however, think that the cases first above quoted and cited go to show that a provision making the "insurance effective" notwithstanding the policy was issued contrary to statute is sufficient to indicate legislative intent that the insurance would be effective in every detail; as an obligation to pay loss in case of loss and also as an obligation to pay premium; leaving the violator of the statute subject solely to the penalties by way of fine or imprisonment or forfeiture of license found in other statutes on this subject. *Union Ins. Co. v. Smart, supra,* seems to go further than this and to hold that a necessary effect of validating the policy is to validate the promise to pay premium. Be that as it may, within the rule of this court set forth in *Laun v. Pacific Mut. L. Ins. Co., supra,* the provisions of sub. 4 must be taken as a controlling indication of the intention of the legislature to enforce compliance with the statutes forbidding insurance by nonresident agents, by other penalties than that of holding either the insurance policy or the obligation to pay a premium therefor invalid. It can be fairly said that this leaves the system of statutory regulation unenforceable, wherever the offender is beyond the jurisdiction of the courts to fine or imprison, except by a revocation of its license to do business in this state. This consequence is not sufficient to overcome the deductions to be made from the express language of the statute. *Laun v. Pacific Mut. L. Ins. Co., supra.*

It must be remembered that in the instant case the plaintiff was licensed to do business in Wisconsin and that this decision in no way asserts the right of an unlicensed company to do insurance business in this state.

Having arrived at the conclusion that the obligation to pay premium is enforceable, it seems to us quite apparent from the words of the policy that the rate of premium is not that provided in the policy where the insured intends to discontinue business, but that provided for cases where the policy is canceled at the request of the insured. The fact that one of the insured intended to go out of business would not, we think, bring both, jointly insured, within the stipulation for a lower rate in case the insured intended to go out of business.

It follows that the judgment of the municipal court must be reversed, and the cause remanded for judgment for the plaintiff in accordance with this opinion.

*By the Court.*—It is so ordered.