MARONEY, Receiver, Appellant, v. ALLSTATE INSURANCE COMPANY, Respondent.*

*November 28, 1960—January 10, 1961.*

* Motion for rehearing denied, with $25 costs, on March 7, 1961.

For the appellant there was a brief and oral argument by *Walter J. Steininger* of Milwaukee.

For the respondent there was a brief and oral argument by *George D. Young* of Milwaukee.

MARTIN, C. J.   The receiver charges that Allstate acted in bad faith in failing to offer the policy limits of $10,000 to settle the Marschke claim.  It is contended that a jury issue is raised (1) as to whether Allstate's acts and omissions with respect to the settlement negotiations prior to trial constituted bad faith, and (2) as to whether the insurer's conduct toward Weaver prior to trial constituted bad faith as a violation of its duty to keep him informed of developments and refrain from any conduct that would prejudice his rights and interests in the matter.

Appellant contends that Allstate knew Weaver's liability was clear, that the injuries were very great and damages would exceed the policy limits; that it knew the Marschkes were willing to settle for the policy limits before trial, but it refused to make such settlement.

In our opinion, no jury issue is raised as to Allstate's conduct of the settlement negotiations before trial.  There is some dispute as to whether the insurer knew that the Marschkes were willing to accept the policy limits before trial, but the dispute is immaterial since its counsel states that after learning of the boy's recovery from his injuries and that he was doing manual work in 1953, he revised his estimate of the value of the case to between $7,500 and $8,500. As the trial court observed, it is not bad faith if counsel for a liability insurer refuses to settle the claim of an injured person under the *bona fide* belief that the insurer might

defeat the action or keep the verdict within the policy limits. Considering all the undisputed facts presented in this case, it may be that the insurer acted negligently, exercising poor judgment, but it is not enough to show that it acted negligently in deciding to litigate rather than settle the case. "Bad faith is a species of fraud, and the evidence to sustain a finding thereof must be clear, satisfactory, and convincing." *Berk v. Milwaukee Automobile Ins. Co.* (1944), 245 Wis. 597, 601, 15 N. W. (2d) 834.

Appellant contends it is also a jury question whether Allstate's actions toward the insured amounted to bad faith. He cites *Hilker v. Western Automobile Ins. Co.* (1931), 204 Wis. 1, 231 N. W. 257, 235 N. W. 413 (rehearing), to the effect that an insurance company owes to its insured the duty to inform him if its investigation indicates a recovery will exceed the indemnity so that he may protect himself. This court there held (p. 17) :

"We can see no room to quibble upon the proposition that the insurer made an inadequate, a careless if not shiftless, investigation of the facts with reference to the accident and injury, that it never at any time was in position to exercise a sound or good-faith judgment, and that in none of these respects did it meet the duty which it owed to the plaintiff. As a result of its dereliction in these respects, it never in good faith determined for itself whether the claim should be compromised or settled, nor did it place the insured in possession of facts suggesting liability on his part which would enable him to take any steps to protect himself. As a result of our consideration we entertain no doubt that the mandate in this case is correct, and it is now confirmed."

We do not have that situation here. There is no showing that Allstate failed to make an adequate investigation of the accident and injuries, the kind of an investigation which would place it in a position to exercise a good-faith judgment with respect to settling the claim. Neither is there any showing that the company failed to advise Weaver of the fact that recovery might exceed policy limits and suggest that he

take steps to protect himself. On the contrary, shortly after suit was commenced the insurer advised him that the amount claimed was in excess of the policy limits; that should a verdict be returned for an amount in excess of those limits, he would be personally liable for the excess; that it was his privilege to retain his own attorney. When the case was about to be set for trial the insurer again advised Weaver to that effect and suggested he might desire to contribute toward a sum in settlement or engage in settlement negotiations or engage a personal attorney to act in his behalf. Weaver took no steps whatever for his own protection. During the trial, when the offer of policy limits was made, he was informed of the negotiations and participated in them through counsel for the insurer. It was his refusal to agree to the payment of the additional $600 with the conditions which the Marschkes insisted upon for their security, which brought the negotiations to a close, the trial proceeding to verdict and judgment. Upon the undisputed facts in this respect, a jury would not be permitted to find bad faith on the part of Allstate toward the insured. We find nothing to indicate that the company was ever advised that the claim could be settled by payment of policy limits.

The trial court properly granted summary judgment, it clearly appearing from the undisputed facts that no triable issue of fact is presented and a trial could only result in a judgment as a matter of law. Such facts as are disputed are immaterial to the questions of law presented and do not afford a basis for denying summary judgment. *Hafemann v. Korinek* (1954), 266 Wis. 450, 63 N. W. (2d) 835.

*By the Court.*—Order and judgment affirmed.