John KLINGMAN, Plaintiff-Appellant,

v.

NATIONAL INDEMNITY COMPANY,
Defendant-Appellee.

No. 14025.

United States Court of Appeals
Seventh Circuit.

May 29, 1963.

Robert F. Pfiffner, Chippewa Falls, Wis., for appellant.

James T. Murray, Milwaukee, Wis. (Arnold, Murray & O'Neill, Milwaukee, Wis., of counsel), for defendant-appellee.

Before HASTINGS, Chief Judge, SCHNACKENBERG and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

Plaintiff John Klingman brought this action against defendant National Indemnity Company (National) to recover damages occasioned by defendant's alleged bad faith in failing to settle within its policy limits a claim for personal injuries arising out of an automobile accident. Based on plaintiff's complaint, defendant's answer, defendant's motion for summary judgment and affidavits in support of and in opposition to such motion, the district court granted summary judgment,[1] dismissing plaintiff's complaint on the merits. This appeal followed.

The following facts appear from the pleadings and affidavits relied on by the district court in entering summary judgment.

On August 16, 1958, plaintiff, driving his own automobile, was involved in a collision with an automobile driven by Delima Mondor. Delima Mondor and her husband subsequently brought suit in the circuit court in St. Croix County, Wisconsin against Klingman and National as Klingman's insurer. Mrs. Mondor alleged that Klingman was negligent and sought to recover for personal injuries sustained as a result of the collision. Mr. Mondor, who was not involved in the accident, sought recovery for damages sustained by him as a result of his wife's injuries.[2]

After the Mondors' suit was commenced, but before trial, National notified Klingman that it would neither defend him nor afford coverage to him under its policy because of misrepresentations by Klingman in his application for the insurance. After National's refusal to defend him or afford coverage, Klingman hired an attorney to conduct the defense on his behalf in the state court action. National filed a separate answer denying the allegations of negligence and interposing an affirmative defense claiming the insurance policy was void because of Klingman's alleged misrepresentations in his application for the insurance.

Before and during the trial of the state court action, the Mondors offered to settle their claims for $10,000, the limit of National's liability under its insurance policy. Klingman in each instance demanded that National accept the offer and settle the claims, but National refused.

The issue of coverage raised by National's affirmative defense was tried to the court which found that National had no valid policy defense. The negligence issues were tried to the jury which found Klingman guilty of gross negligence and assessed 90% of the combined causal negligence to him and 10% to Mrs. Mondor. So far as relevant to the case at bar, judgment was entered for the Mondors in the state court actions in the aggregate sum of $36,150.85, of which $10,000 was against National and $26,150.85 was against Klingman.

---

1. Rule 56(c), Federal Rules of Civil Procedure, 28 U.S.C.A. provides in pertinent part: "The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

2. Angeline Martell, who was Mrs. Mondor's passenger, died as a result of the collision, and her husband brought suit against Klingman and National. Mrs. Martell's husband's action and the Mondors' actions were consolidated for trial in the state court. Mrs. Martell's husband's action is not material to the case at bar.

On appeal to the Supreme Court of Wisconsin, the judgment against Klingman and National was affirmed. The trial court's holding that National had no valid policy defense was upheld. The jury's finding that Mrs. Mondor was guilty of 10% of the causal negligence was reversed on the ground that there was no evidence to support such a finding.[3] Martell v. Klingman, 11 Wis.2d 296, 105 N.W.2d 446 (1960).

National satisfied the judgment against it. The judgment against Klingman in the amount of $26,150.85 remains unsatisfied, and he now seeks to recover this amount in the instant action.

■ It is the rule in Wisconsin that an insurer must exercise good faith in choosing to litigate a claim against its insured instead of accepting an offer of settlement within policy limits. Byrnes v. Phoenix Assurance Company of New York, 7 Cir., 303 F.2d 649 (1962); Berk v. Milwaukee Automobile Ins. Co., 245 Wis. 597, 15 N.W.2d 834 (1944).

In the case before us, plaintiff Klingman contends not only that defendant National was guilty of bad faith in refusing to settle the claim on its merits but also was guilty of bad faith in asserting the policy defense.

■ The question of whether an insurer owes an insured the duty of good faith in asserting a policy defense has not arisen in Wisconsin. It is a logical extension of the good faith rule to hold an insurer to such a duty. We conclude that under Wisconsin law an insurer must exercise good faith in asserting a policy defense which would defeat coverage instead of accepting an offer to settle a claim within its policy limits.

It is plaintiff Klingman's theory that defendant could not reasonably have concluded that it could prevail on its policy defense and was therefore guilty of bad faith in asserting this defense.

Klingman's application for insurance represented that he had had no prior driving convictions when in fact he had previously been convicted of speeding and reckless driving. The evidence in the state court action showed that the application for insurance was filled in by National's local agent. The agent did not recall asking the question concerning prior driving convictions. Klingman and the agent agreed that the application was not read to or by Klingman. National offered to prove that had the underwriting firm which passed upon its risks known of the prior convictions it might possibly have disapproved the issuance of the policy. This offer of proof was rejected by the state trial court, and the rejection was upheld on appeal. Martell v. Klingman, 11 Wis.2d 296, 105 N.W.2d 446 (1960). National was unable to produce testimony to the effect that had it known of the prior convictions it would not have issued the policy.

■ Thus National was unable to prove either that the misrepresentation was made with intent to deceive or that such misrepresentation served to increase the risk. Proof of one or the other of these factors was necessary to enable National to avoid coverage under its policy. Wis.Stat. § 209.06 (1961).

■■ The strength or weakness of National's case on its policy defense is a factor to be considered in determining its good faith in asserting it. See Royal Transit v. Central Surety & Ins. Corporation, 7 Cir., 168 F.2d 345 (1948), cert. denied, 335 U.S. 844, 69 S.Ct. 68, 93 L.Ed. 395. We conclude that the ultimate issue —whether or not National exercised good faith in asserting the policy defense— is an issue of fact which, in the instant case, must be determined at a trial on the merits of this issue. We cannot say as a matter of law that National exercised good faith in asserting the policy defense.

We turn now to the issue of National's good faith in refusing to settle within the policy limits.

---

3. This partial reversal was not material to the Mondors' actions against Klingman. It was relevant only to the Martell action.

By his complaint in the instant action, plaintiff alleged that defendant knew prior to trial in the state court that he, Klingman, had been guilty of gross and ordinary negligence. The complaint further asserted that defendant was aware of the serious permanent injuries suffered by Mrs. Mondor. By its answer, defendant denied knowledge of any negligence whatsoever on the part of Klingman and denied knowledge of serious injuries. Defendant stated in its fourth defense that it concluded as a result of its investigation "that in the event John Klingman was negligent, such negligence was not as great as that of Delima Mondor."

The evidence produced in the state court trial tending to prove Klingman's negligence showed that he had had four or five brandies and some beer within five hours of the accident. A urine specimen was taken from Klingman shortly after the accident and analysis revealed the presence of .29% alcohol. This is well above the amount constituting prima facie evidence of being under the influence of intoxicants. Wis.Stat. § 325.235(1) (c) (1961).

The testimony in the state court action showed that the impact occurred in Mrs. Mondor's lane of travel. Debris and gouge marks were on the highway in her lane of travel. Klingman stated that he had swerved to his left. Mrs. Mondor testified that Klingman swerved into her lane when the vehicles were about 50 to 60 feet apart. A police officer testified that he went to the hospital shortly after the accident and asked Klingman what happened. Klingman replied that he believed he fell asleep. Klingman repeated this statement the next day, saying that he fell asleep and when he woke up headlights were in front of him and he swerved to the left. The police officer testified that this statement was made in the presence of one of defendant's investigating agents.

Klingman testified at trial that when he first saw the Mondor car it was six car lengths away and in the center of the road. He stated he was in his own lane

of travel and swerved to the left in an attempt to avoid hitting the Mondor car. A disinterested witness testified that she had seen Klingman shortly before the accident and at that time he was sober and normal.

On the appeal to the Supreme Court of Wisconsin, National claimed "there was no credible evidence of negligence on the part of John Klingman." In response to this contention the court stated: "Several other claims of error approach being frivolous. This one patently is so." Martell v. Klingman, 11 Wis.2d 296, 310, 105 N.W.2d 446, 454 (1960).

The pleadings and affidavits do not reveal the extent of National's knowledge of the factors indicating Klingman's liability. Aside from the conclusory statements in defendant's answer and affidavit in support of the motion for summary judgment that defendant made an exhaustive, complete and thorough investigation of the facts relating to the accident, the exact nature of defendant's investigation does not appear. These are clearly factual questions which are material to the issue of good faith. Hilker v. Western Automobile Ins. Co., 204 Wis. 1, 231 N.W. 257, on rehearing, 235 N.W. 413 (1931).

■■ Assuming that National's investigation was exhaustive, complete and thorough, a factual question as to its good faith remains unresolved. An insurer must exercise good faith in settling a claim within the limits of its liability "where liability is conceded or where there is no reasonable basis for a contrary conclusion." Royal Transit v. Central Surety & Ins. Corporation, 7 Cir., 168 F.2d 345, 346 (1948), cert. denied, 335 U.S. 844, 69 S.Ct. 68, 93 L.Ed. 395. This must be determined by the trier of fact after hearing the relevant evidence on this issue.

In its answer, National alleged that Klingman was precluded from charging it with bad faith in refusing the settlement offer. This defense was based on its reliance on Klingman's statements to it that he was not negligent in driving

his car and that he was not then under the influence of intoxicants. Further, Klingman had made the same representations in his defense of the state court action.

While Klingman's conduct is relevant to a determination of the good faith issue, it is not conclusive and may not operate as an estoppel. Under some circumstances, in order to act in good faith, an insurer may be required to disbelieve its insured.

In arriving at our conclusion that plaintiff is entitled to a trial on the issue of defendant's good faith, we are mindful of the one instance in which the Supreme Court of Wisconsin upheld a summary judgment for the insurer. But the factor which gave rise to that decision is not present in the instant case. There the insurer was never advised that a claim against its insured could be settled by payment of the policy limits. Maroney v. Allstate Ins. Co., 12 Wis.2d 197, 107 N.W.2d 261 (1961).

In deciding that there are genuine issues as to the material facts relevant to Klingman's charges of bad faith against National, requiring a trial on the merits of the complaint and the several defenses thereto, we expressly refrain from indicating any views on the merits of this controversy.

Defendant contends that the state trial court has already determined the issue of whether or not it was guilty of bad faith. Immediately after the jury rendered its verdict and the trial judge resolved the question of the policy defense, the Mondors moved to amend their complaint to state a cause of action against National for bad faith in refusing to settle their claims. The court denied the motion, stating it could not find sufficient evidence to justify a finding of bad faith.

The issue of National's good faith was not present in the state court action until the Mondors' motion. The evidence was not presented with such issue in mind. The trial court's denial of the motion to amend can not be taken to be a decision on the merits as to National's good faith.

It was merely a determination that the evidence in the state court negligence action would not support such an amendment.

The question of National's good faith was neither within the issues nor actually presented and decided in the state court action. Under these circumstances, the doctrine of res judicata does not apply to bar plaintiff's present action. Rahr v. Wittmann, 147 Wis. 195, 132 N.W. 1107, 36 L.R.A.,N.S., 392 (1911).

Finally, defendant contends that "the affidavit filed in opposition to defendant's motion for summary judgment is inadequate to meet the requirements of Rule 56(e) of the Federal Rules of Civil Procedure" in that it could not have been based on personal knowledge. Defendant does not contest the truthfulness of any matters alleged in the affidavit. No objection to this affidavit was made in the district court, and the court recited in its order granting summary judgment that this affidavit was considered. The objection is made for the first time on this appeal.

The thrust of Rule 56(e) is that the affidavit "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." It is settled law that testimony to which no objection is made may be considered by the trier of fact. We conclude that an analogous rule is applicable here. On a motion for summary judgment, if no objection is made to an affidavit which is objectionable under Rule 56(e), the affidavit may be considered by the court in ruling on the motion. See Monks v. Hurley, D.C.D.Mass., 45 F.Supp. 724 (1942); 6 Moore, Federal Practice ¶ 56.22, at 2335 (2d ed. 1953).

For the foregoing reasons, the summary judgment entered by the district court is reversed and this cause is remanded to the district court for further proceedings consistent with the views expressed herein.

Reversed and remanded.